The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this Honorable Court. Um, please be seated. We are prepared to begin argument in our Mathis case. And Mr. Burke, whenever you're ready. May it please the court. My name is Peter Burke. I along with my co-counsel, David Ventura, we represent Anthony Mathis, the plaintiff appellant in this matter. On March 10th, 2017, Anthony Mathis was at Hunter Farms loading some sludge when he and an employee of Hunter Farms, Mitch Young, heard a hissing coming from trailer 11-500, which they were loading. Upon hearing the hissing, they immediately stopped their actions. Mr. Young went to turn off the pump. My client checked the vent hose and the canister, which was putting the material into the trailer. When Mr. Young came back within eight to 10 seconds, my client told him that he was going to go down the trailer and loosen the latches on the manway. About 34 seconds later, while my client was on top of the trailer, there was the manway blew. My client was thrown into a building. He suffered a fractured skull, a TBI, and life-altering injuries. He's now a paraplegic. He ended up suing the defendants in this matter, the parent company, Darling Ingredients, and Terra Renewal Services. They were the ones who had serviced and supplied the trailers to my client's employer, LJC. The matter went to trial. The jury found the defendants guilty of negligence, but they also found my client guilty of contributory negligence, and we took this appeal. On appeal, we have raised five issues. The primary ones are the first three. The first two are kind of linked together. We claim error that the district court did not give the instruction of sudden emergency doctrine and granted a directive verdict on that issue in the defendant's favor. Likewise, the judge also ruled in their favor and did not give a gross negligence count. The third matter is after the trial. We filed a motion for new trial, and the district court denied that motion. The standard of review on the Rule 50 rulings is de novo, so this panel will sit here hearing the same evidence and applying the same Rule 56 judgment standard that the district court did. As Seals v. Grant states, this court... Before I interrupt you, just to make sure I understand a little piece of the record, you indicate that your client lives in North Carolina. Is there any reason to think his citizenship is anywhere else? You don't allege his citizenship for diversity purposes. You just say he lives in North Carolina. Is there any reason to doubt his citizenship in North Carolina? No, not at all. With respect to Tara, you allege that it had a principal place of business in North Carolina. The defendants denied that in their answer. Was there jurisdictional discovery done on what the principal place of business for Tara was? I'm just trying to figure out if we have to ask where its principal place of business is, right? Whether it's a wholly owned subsidiary doesn't seem to answer the question of where its principal place of business is, does it? I can ask your colleague. I asked you not the question of what it is, but did you do any discovery or work to figure out where its principal place of business was? No, because the jurisdiction of the district court wasn't in dispute, so that didn't arise at the lower level. You understand that you've got the obligation to establish jurisdiction, right? You can't concede it. It's always in dispute, right? That's why we generally ask that plaintiffs allege the citizenship of the plaintiff and allege the citizenship of the defendants, and if it's denied, then produce evidence to establish that jurisdiction. That's the typical way that we establish federal jurisdiction, right? Yes, Your Honor. Returning to the standard of review with the sales versus grant on the affirm, if there's only one reasonable conclusion that can be reached from the evidence, but if reasonable minds can differ on the issue, then the district court should be reversed. The Supreme Court precedent indicates that the granting of the Rule 50 motion is disfavored, and it's encouraged that the issues go to the jury. Turning to the sudden emergency doctrine, my client established a prima facie case that he was reacting to an emergency, that over-pressurization of the trailer is a known hazard in the industry, that his employer, Luke Mathis, agreed that Anthony was reacting to an emergency. The district court committed error, we believe, as a matter of law, first by contending that it had to be instantaneous action, and the fact that it took my client eight to ten seconds before he began reacting to the sudden emergency, that that was error's law. We believe that the recent case, Cheney versus Mack, which we filed as a Rule 28J letter two days ago, conclusively shows that the trial court erred in thinking that it had to be instantaneous. We had cited other cases to the court. Well, the problem here is that the trial court perceived it that your client actually created the emergency by climbing on top of the tanker. Well, the trial court— It wasn't an emergency until your client created it. Well, the judge did write that my client did not do what a reasonably prudent person would have done, but we believe that in reaching that finding, he committed error because he was overreaching and invading the province of the jury. The issue of whether or not there's a sudden emergency, the reaction to those events, and what a prudent person would have done are clearly questions for the jury that should be sent to the jury, and we cited the Jay versus Walla Walla case where they clearly stated that. We cited other authority dealing with sudden emergencies where it was a jury question. Can I ask you a question? As I read the district court, it found that the uncontroverted evidence was that there was not, in fact, an emergency that required instant action because the overpressurization would go away by itself. The hissing noise was it escaping, and the air escaping, and it would go away by itself. So is your argument that the district court was wrong about that, that there actually was evidence from which a jury could find an actual emergency, or is your argument that it doesn't matter because it's enough under state law if your client reasonably perceived that it was an emergency and there was evidence of that? I think both are true, but the latter is definitely true, that he reasonably apprehended that there was an emergency, and so that was enough. Did he testify to that? I thought he didn't remember. He didn't remember the actions of the day because of his head trauma, but he did state, and there is testimony, he said, I was trying to do something before something bad happened. I mean, that doesn't make something an emergency, right? Well, I mean, I get the objective piece, right, and the argument that maybe you're making there, but the subjective piece seems hard, and I understand why it's hard. It's not a critique of his not remembering the horrific accident, but if we're looking alternatively just at his subjective beliefs, that seems like a hard bar to break. Well, I think it's a reasonable subjective belief, given that over-pressurization is a known hazard. But a reasonable subjective belief begins with whether it's a subjective belief, and then we ask if it's reasonable, right? And what we don't have is evidence that it was his subjective belief that it was an emergency. Well, both he and the employee at Hunter Farms reacted to the hissing. There would have been no reason if there wasn't an emergency. All right, but when I ask you a question, you react to the question, right? Like, that didn't get us there. Like, a reaction is not an indication of an emergency. I do believe the reaction shows the perception of an emergency. There was no evidence offered from the defendants that what the pressurization was on the trailer. The only evidence was the belief that there was an emergency. But again, that should have been given to the jury to decide whether or not there was an emergency, and not have the judge invade the province of the jury and make that decision himself. Luke Mathis, my client's boss, he testified that there was, in fact, an emergency, and my client was reacting to it. The jury should have been able to weigh that evidence and take an inference in my client's favor and find that there was a sudden emergency. Counsel, the sudden emergency doctrine is used only sparingly by North Carolina courts. All torts which result in injuries, a great many of them come about because of instantaneous conduct or as a result of some claimed emergency that presents itself. An automobile accident, for example, when you see a car coming down the road in the wrong lane or whatever, people talk about a sudden emergency. But the North Carolina courts have been very reluctant to allow a doctrine of sudden emergency to displace ordinary jury findings about negligence and contributory negligence. In other words, I think it's a very sparingly used doctrine because of the danger that it can displace just ordinary questions of negligence and contributory negligence, which form the gravamen of any tort action. Well, Your Honor, we did cite cases from early on in North Carolina jurisprudence where involving two tanker trailers and possible explosions. And in one of those cases, the Rogers versus Thompson case, it cited favorably to J versus Walla Walla College. There, a student was in a classroom, perceived an emergency, left the classroom, retrieved a fire extinguisher, went back to the classroom, and then there was an explosion. There was several seconds that passed there. And again, the court said whether there was a sudden emergency and how you reacted. How do we square your argument on sudden emergency with the jury's finding of contributory negligence? And it seems to me, given the jury's finding of contributory negligence, there's a strong argument that there wasn't an emergency here, that the emergency was created by your client's conduct and your negligent conduct. Because I just don't understand how the jury's finding of contributory negligence can be consistent with your view that there was a sudden emergency doctrine. I mean, I haven't seen the two mesh together. Well, Your Honor, the jury also found negligence against the defendants. And I would argue that proper inference to take is that that finding shows that the defendants caused the sudden emergency. Now, if the charge of sudden emergency had been given to the jury, they may not have found my client's conduct contributory negligent at all because actions that are taken during a that if the jury had been given the prism or the lens of that doctrine and that charge, it might not have found my client contributory negligence. Thank you, sir. You have some rebuttal time, but I'm going to ask my colleagues if they have any further questions of you. Judge Harris, do you have any questions? No, thank you. Judge Richardson, do you have any questions? No, thank you. All right, well, then let's hear from Mr. King. Thank you, Your Honor. May it please the court. Good morning. My name is Robert King. I'm with the Brooks Pierce Law Firm. Together with my friend and partner, Matt Tynan, who is sitting to my left, I represent the Defendant's Chair of Renewal Services and Darling Ingredients. And just to avoid being rude, sitting to my right is Mr. Kuykendall, who represents the third party defendants. To the great able to the court, I'd like to spend a few minutes talking about the briefly the primary arguments that have been raised. Can you start with what Tara's principal place of business is? First on my list, Your Honor, is Dallas, Texas, Your Honor. Both Darling and Tara Renewal have their principal place in Dallas, Texas. And how do I, I mean, this is not a question of you, but how do I actually know that, right? We don't tend to rely upon, you know, a statement made. And it's a little bit hard, right? Because in the complaint, they allege that it was Texas. And at least what it appears is that you denied that. And maybe I'm misreading it, right? Maybe I got the paragraphs wrong, but I think you denied that their principal place of business was Texas. And so I'm having a little hard time. How am I, how do I know that? Other than you say it and you sort of say the answer was wrong. I would have to go back and look, Your Honor. I'm afraid that this is catching me sort of cold. Actually, I take that back. I've just been informed that Tara Renewal is actually based in Arkansas. Now, of course, Your Honor, Your Honor would have to rely on me. Change during the course of litigation. But anyway, it's Arkansas, but that doesn't answer Your Honor's question, which is how do we establish that? Needless to say, none of this is helping, right? And to be clear, we're asking about the place of incorporation, which might well be Arkansas, is a separate question. And so maybe if you'd be so kind to submit something to us that would help us understand where Tara's principal place of business is, and you might as well include its place of incorporation while you're doing it. I would be happy to do so, Your Honor. Thank you. The facts that I wanted to address are of two types. First, I don't think, frankly, either side did a particularly great job of explaining how these tankers work. I think it's hard to put it into words. What I wanted to do is spend a moment on that, because that goes directly to the four different acts of contributory negligence that were committed by plain event order. There's been a lot of loose use of the terms pressurization and overpressurization. To be clear, these long tubes are designed and intended to be pressurized. They're designed and intended to hold vacuums. And so when we talk about the tanker pressurizing, they're supposed to pressurize. That's not the issue. The issue was whether it was pressurizing at the wrong time. Plaintiff was loading this tanker at the time. There were three different ways to load this tanker. The simplest way is you pull up, you open the top hatch, and you just pour the goop inside. And that's what we're talking about, something that's sort of like oatmeal. That's the simplest way. The second way, which is the way that the plaintiff was using, was you have the cylinder, you have a hole in the bottom called the belly port, and you take a pump and you force the goo inside the cylinder. The third way is that there's something called the secondary canister. It sits off to the side. You apply a vacuum to that, and that sucks through the belly port in. The problem with the second approach is that the air that is in the 100% certain way to avoid pressurization of a tanker when you were loading through the belly port, you open the top manway hatch. Open the top manway hatch, there is no chance the tanker can pressurize. And that is such an obvious and simple and effective way to do that that LJC, the employer for the plaintiff, had a written standard operating procedure that said you must open the hatch when you were loading the tanker. Because if you do that, that's the end of any regarding pressurization. The plaintiff acknowledged that he knew about that written procedure. Counsel, I don't mean to interrupt you, but I feel like you totally persuaded the district court judge of what you were saying. But your colleague is saying that that was everything you were saying sort of should have gone to a jury, including the instruction on contributory negligence that would kind of change the standard of care for a sudden emergency. And I will say I have some concern, some of the language the district court used in describing its holding. I mean, it said a couple of times that there was sufficient evidence that the plaintiff knew this wasn't a real emergency and that certain facts tended to negate the perception of an emergency. And those all sound like that's not the right question, right? The question is, would the jury have been compelled to accept the account you're giving now? And I'm little bit concerned that it sounds like the district court was kind of straying into the jury's prerogatives here. Well, Your Honor, I personally agree that the district court did use some sort of squishy language there. But the ultimate question is, what does the record show? And the record on all four acts of contributory negligence was uncontroverted. Just so I'm clear, was that the language that the district court used in the new trial order? Or was that the language used in denying the mid-trial judgment as a matter of law? Because the new trial, the standard is whether there's sufficient evidence, right? Like once you get to the new trial, does the standard not shift at a new trial? So he's writing about the same issues. But in a new trial motion, the standard looks different than the standard does when he made the ruling mid-trial. Yeah, you're right about that, Your Honor. And what I have in my mind is the ruling on the new trial motion is where I think there was some language that when I read it, I thought, that's not really the language that I wish he'd used. But the bottom line is not the language that the court used. The bottom line is, what is the evidence in the case? If, Your Honor, if you read nothing in this case except the cross-examination of the plaintiffs, that is the end of the case when it comes to contributory negligence because he admitted all of the acts of contributory negligence with no contravening evidence. If you had a plaintiff that gets on the stand who says, I had a written standard operating procedure from my employer that told me I had to open this hatch. I knew I had to do that. I knew it was a safety issue. I didn't do it. If I had done it, this accident never would have happened. I think you could put a period at the end of this case at that point because that's contributory negligence right there coming from the plaintiff's mouth. And the only other evidence that we have about what the plaintiff was doing at this time was a video that is perfectly consistent with that. And then Mitch Young. Is this, just so I understand where we are in the outline of your argument, is this your harmless error argument that even if the jury should have been instructed on the sudden emergency doctrine, it wouldn't have made any difference? Or is this an argument for why they shouldn't have been instructed on that? Well, I think I'm mashing them together, Your Honor. I was really not even going to go to a harmless error argument. Look, the sudden emergency doctrine, and Judge Wilkerson is exactly right. North Carolina courts don't use those very much. It almost always happens in an automobile accident case. And the idea is, I'm driving down the road, somebody jumps out in front of me, I jerk the steering wheel without thinking, and I hit some poor person who's standing on the side of the road. The problem with the sudden emergency doctrine in this situation is that it fails three different ways. And in each situation, the evidence is undisputed. And those three ways are, first of all, it has to be an sudden emergency, actual or apparent. It sounds like it's enough if there's a reasonable belief that it's an emergency. Is that not right? Well, I think that gets to Your Honor's question about whether or not it's a subjective belief or it's objective. Well, you definitely need the subjective belief. You have to perceive that there is an emergency. But it looked to me, at least from the pattern jury instructions, and a lot of the cases quote them, that it's enough if you subjectively think it's an emergency, a qualifying sudden emergency, I want to bracket that, and that's a reasonable belief under the circumstances. Well, first of all, if the standard is subjective, I think Your Honor is right that that is part of it. There is no evidence as to what Mr. Mathis was thinking because Mr. Mathis was unable to testify at trial, so we don't have his subjective belief. If we look at the objective component, and there is an objective component to that, all the North Carolina cases talk about is you have to act instantly or you have to act within a few seconds. North Carolina courts have rejected somebody who waited 15 seconds in order to take action. In this situation, we have almost a minute that goes by after Mr. Mathis discovers that there's a problem. He has time not just to think, he has time to stand there and have a conversation with somebody about what he's going to do, then climb the ladder, and then start trying to open the lid. So the first thing that fails on a sudden emergency for the plaintiff in this situation is that there was no emergency objectively. There was no evidence of an emergency subjectively, but here's the other part of it. Let me go to the second one if I could, Your Honor. When you take action, you have to be taking action to avoid harm. If I'm driving down the road and I want to avoid a pothole and I jerk the steering wheel and I kill somebody on the side of the road, I don't get the sudden emergency doctrine because I'm not trying to prevent harm here. There was no reason, and Mr. Mathis admitted this, there was no reason for him to get on top of that tanker and try to open it. There was no risk of explosion because as soon as the hissing was heard, they knew two things, and plaintiff acknowledged that he knew two things at this point. The first was that the tanker had pressurized, and the second was that the hissing was caused by the air coming out. Every single witness, including plaintiff, said if he had just waited, this tanker would have depressurized on its own. There was literally no safety reason for him to get on top and try to open this tanker. The reason he did it, apparently, was because he was in a hurry, but had no basis in terms of safety. I gather at the bottom, your argument is that even if there was some inartful language used by the district court, that any error is still subject to Federal Rule Civil Procedure 61, which is that substantial rights of the party have to be affected. Your argument is, as I understand it, and if I'm not correct, that this is at heart, basically, a question of ordinary garden variety negligence on the part of your client, and ordinary garden variety contributory negligence on the part of the plaintiff. What it comes down to is a negligence case, pure and simple, and the North Carolina courts have been careful not to let things like the sudden emergency doctrine and everything derail the case from the heartland of tort law, which is, was there negligence and was there contributory negligence? That is what you're telling us, as I understand it. That is what this case is about. It's not a complicated case. It's a simple case of negligence and contributory negligence at heart, because that's what tort law, that's the foundation of it all. The North Carolina courts realize you can, if you expand this sudden emergency doctrine, which so often negligence cases present a need for sudden action or what have you, and injury cases do, but you can have the sudden emergency doctrine be an exception that swallows the rule, and the North Carolina courts have been reluctant to just go down that road. That's what I understand your argument to be. You're 100% correct, Your Honor. In fact, Mr. Tynan and I were in the talking about the fact that this case is basically the case it was the day that it was filed, that we had an understanding of the case that was correct as soon as it came in, which was, and the court mentioned harmless error. I don't think this court made any mistakes at all. I think he got it absolutely substantively. Even if it did, it would be subject to Rule 61. Your Honor is exactly right. Here's my point about the contributory negligence. We've got intentional violation of a standard operating procedure, which the plaintiff admitted was the case. We've got the fact that if the witnesses, if the plaintiff is not going to do what his employer tells him to do, and he's going to rely on the secondary canister for venting, everybody, including the plaintiff, said you have to pay careful attention to the venting, because as soon as that air stops coming out, you've got a serious problem. It is undisputed that the plaintiff did not pay attention to the venting, because we've got him on video sitting in his cab for 18 minutes at a time and inside the building for 10 minutes at a time. Again, undisputed contributory negligence. And then once he discovers that there is a problem, that the hissing, he makes the worst of the decisions, which is he turns to Mitch Young, who's the only competent witness in the case, and says, this tanker has built up pressure. I'm going to get up on top and open the lid, which witnesses described as playing with a cocked gun. How many cases has the substance of the sudden emergency doctrine been applied where there was contributory negligence? Because the whole idea, the whole thing at the heart of the contributory negligence finding was that the appellant could have avoided the injury by simply waiting for the pressure to leak out. The appellant placed himself in danger by climbing atop the pressurized tanker. And if that's the case, the appellant was the one who contributed or at least contributed to the emergency. So how many North Carolina courts are sparing to begin with in their application of the sudden emergency doctrine? And I've found very, very few cases where sudden emergency doctrine has been applied in a case where there's actually a jury finding of contributory negligence. Well, and your honor is correct. They are mutually exclusive ideas. Counsel, I feel like I am missing something and maybe you can explain it to me. I thought necessarily the sudden emergency doctrine would come up in contributory negligence cases. I understood that it was a sort of a different standard, almost like a defense to contributory negligence, a different standard of care that applies to the contributory negligence inquiry, that in the face of a sudden emergency, you don't hold people to the same standard of a kind of no longer is. But am I totally misunderstanding this? Well, I would never tell a judge that they completely misunderstand. It applies to any situation in which a person is being accused of negligent conduct. Okay. So it's a plaintiff, it's going to be contributory negligence. Correct. It can go either way. Okay. Yeah. And to Judge Wilkerson's point, you will not find cases in North Carolina that apply the sudden emergency doctrine in a situation in which the person who is seeking to apply the doctrine is in fact at fault because those are mutually exclusive ideas. Right. But you would send, it's a jury instruction on contributory negligence, right? Isn't that the real issue here, whether this jury in finding contributory negligence should have been instructed on the sudden emergency doctrine? In this specific situation, you're exactly correct, Your Honor. I mean, what the plaintiff is saying is don't apply the normal reasonable man standard to me. Say to the jury, you get to put yourself in the position of somebody who's dealing with an emergency. Right. So it can't start from the fact of, well, he was contributory negligent. Like, that's the whole issue in the case, whether in making that finding, the jury should have been instructed that it could apply the kind of lower standard of care because this was a sudden emergency. And I understand all of your arguments for why it was not, and they should not have been so instructed. But I just want to make sure I understand kind of the order of operations here. No, I think Your Honor has it right. I think the idea is that when you're instructing the jury on the reasonable man standard for the act or you do you instruct this person did not have time to react or to think through what they were doing. Okay. And in this situation. Can I ask you one question about that? Absolutely, Your Honor. It looked to me like the district court, that it sort of mattered to the district court that this plaintiff is sort of trained to operate these vehicles that your colleague said it was sort of a known risk. And the district court was like, yeah, it was a known risk. He's trained to do this. And so under North Carolina law, he doesn't get sort of the same. Okay, I don't want to say this wrong, but almost like the same benefit of like, oh, he would have been freaked out. He wouldn't have known what to do. So for him, this would have been a sudden emergency that given that he's a trained expert on how to handle exactly this problem. That was another thing I thought that the district court thought made the instruction inappropriate here. I agree with that, Your Honor. I don't think that that conclusion by the trial court was necessary for the court's conclusion. To a certain extent, I thought that was a little bit of piling on because the answer is that the negligence that was committed by the plaintiff in the situation was multifold and undisputed. I mean, if you could use contributory negligent as an adjective, it would be the most contributory negligent case I think you've ever seen because you've got violation of a written standard operating procedure. You've got failure to follow the methodology that you're supposed to follow. I just want to make sure I understand it. I mean, it is a little odd, right? Because, you know, we think about what's objectively reasonable for a person in that situation, right? And if I was standing beside a tanker that was hissing, I might have a very different reaction than somebody who works on them. And so we tend to think about an objectively reasonable person with the information that they have, right? Not in the abstract, a person who knows nothing about the situation, right? We take the reasonable person that knows what they have. We think about in the officer context all the time, the police officer, we don't take somebody random off the street. We take, you know, given what officers generally know, is that objectively reasonable? It seems to me that we would take into account that this is someone who is, you know, familiar with the operation of tankers and pressure and, you know, like knows how to drive a truck. I mean, all the things that like any reasonable operator would have, it strikes me that we do consider that. I agree a hundred percent, your honor. The point that I was making is I don't think that that conclusion by the trucker was necessary for the finding that he reached. He is certainly right. To go back to Judge Harris's order of operations point, right? The question is, like, what is the objectively reasonable person, right? And on the one hand, it's literally the person picked at random from a phone book, right? Or it's like a reasonable person who's in this situation. And so maybe what would be a sudden danger had a person walking down the street past the tanker making noise might look different than it would to an operator of a tanker. I don't think of it based on the information that they actually have. I agree, your honor, that that is exactly correct. And the point that I want to make, and I certainly realize that I'm over time, is that the plaintiff admitted that he shouldn't have done what he did. So, you know, whether or not, you know, which objective standard you use, which subjective standard you use, at the end of the day, doesn't matter because the plaintiff got up on the stand and said... It does matter because the point is, he's arguing, I shouldn't have done what I did, but it was a sudden emergency. I panicked. I just, I acted really fast. And I mean, that's why I keep coming back to, like, we can't start from the... I mean, I understand that that is where you want us to end. And I understand you're sort of arguing a case. But for us, like, we can't start from that point because he's saying, I get it, I messed up, but it was an emergency. So I am entitled to a lower standard of care. And so we do have to figure out, I think, if this doctrine applies here or not. I agree that the court does need to deal with that issue. I guess part of my point is that this doctrine does not apply for multiple reasons. I mean, whether there was an emergency, your honor is right, is an issue that I think we could spend some time talking about. But he also failed because he was not taking action to put himself in this position. And that is also undisputed. So your honor, I agree we could have an argument about whether or not this first issue was met and how that standard is applied. But at the end of the day, because he was not trying to prevent harm and because he was negligent in multiple ways, sudden emergency doctrine is not going to apply regardless of how the answer comes out on that first element. I have done the best I can. I would ask that the court affirm the decision of the trial court and I appreciate the court's time. All right, Mr. Kuykendall. Yes, your honor. Very briefly, may it please the court. My name is Jeff Kuykendall. I represent the third party defendant in the underlying matter, LJC Environmental. No issues were reached as to my client in the underlying action that we take the position that we would urge the court to affirm the decision of the district court. So unless since you're here and I'm not sure it matters, but LJC is an LLC. It's got three members, Jordan, Luke and Clint all Mathis. Are they all North Carolina citizens? They are your honor. And are there any other members of the LLC? Not to my knowledge, your honor. Thank you. All right, Mr. Ventura, you have some rebuttal time, sir. Yes, may it please the court. Our appealing the 50 a motion is a de novo consideration. This court and the trial court were subject to the constraints in the jurisprudence relating to how a 50 a motion is to be considered. So the trial court in that circumstance is prohibited from weighing evidence for making credibility determinations and with respect to the facts and drawing inferences must draw all inferences in favor of the plaintiff. Our complaint on this appeal is that in ruling on the 50 a the court drew inferences in favor of the defense weighed evidence and determined the credibility of witnesses in reaching its conclusion that the sudden emergency doctrine and jury instruction should not be given to the jury. The jury contributory negligence finding was the product of that error. The sudden emergency instruction is not. Do you agree that when we when we think about your client on contributory negligence, just in general, that we consider whether they acted reasonably in light of like his familiarity and knowledge of a tanker? Right. I mean, we we take his knowledge as part of that right. You also. Yes. And you also take into consideration the fact that he was not trained on how to respond. No, I understand that. I'm just saying as an initial matter, we look at his knowledge and determine whether based on that knowledge he acted reasonably. It's an objective man standard within the circumstances of what occurred or what he knew. It's not it's not an objective man taken off the street, right? It's not a random objective man. It's an objective man who works on a tank. Did he act reasonably within the circumstances in that industry? Yes, considering his training. And that is our argument. Why do you also agree that that that that same idea that when we determine, you know, whether he reasonably perceived an emergency, that we do so based on the information that that he had at the time, right? Like a tanker operator, not, you know, a random guy off the street. We're considering his knowledge base and information into whether his determination was reasonable. Correct. And on a 50A, when there are disputed facts, the issue goes to the jury. The judge and court does not decide a disputed fact. If there's a issue to the jury. In this case, we have Mr. Mathis, whose job is to load the tanker. Suddenly there's hissing coming from the tanker. He stops the job that he's supposed to be doing and immediately starts climbing. Within 10 seconds is climbing to the top of the tanker to investigate the potential source of the hissing, to loosen the latches, as Reggie Porter says, other drivers. In terms of what would present it to the jury, wasn't there a great deal of evidence presented on the fact of simply whether it was reasonable, objectively reasonable for this person to climb on top of the tanker. And I thought that was what the nub of the jury trial was. Was it reasonable for him to do this or was it not? And the jury came down and said, no, it wasn't. Now, what evidence did you, was there any evidence you wanted to put on on that point that you did not get a chance to put on? I mean, I think we can make this more complicated than it needs to be. The question here is whether it was reasonable for him to climb on top of that tanker or whether it wasn't. And there was a lot of evidence both for your client and for the other side as to the reasonableness, the objective reasonableness, of him doing what he did. And the jury resolved that. And the jury resolved that without the benefit of knowing the full scope of the circumstances our client was dealing with, not only his background as a CDL holder with a tanker endorsement, but also the fact that he was dealing with an emergency. They were not told that even if they were critical of some of his actions. But I don't understand if the question of whether he was dealing with an emergency or whether he was not, that's all part and parcel. It's all wrapped up in the question of whether he was contributory negligent. I would respectfully disagree because the sudden emergency jury instruction is a rule of decision making. I understand that, but that's a question of law. But it seems to me it's superseded here by the fact that the factual argument subsumed that question of law. The factual argument, it comes down to the facts and it comes down to the facts that the jury heard. And the facts that the jury heard were all centered around whether he was reasonable for what he did or whether he was not reasonable for what he did. And the question of whether he was reasonable or not reasonable would inevitably take into account the emergency circumstances or lack thereof in the situation. So how could the jury, you have a point of law, but how as a matter of fact could the jury have failed to consider whether there was an emergency either perceived or in actuality when he climbed on top of that tanker? How could the jury have not considered that? If the jury was given the benefit of the sudden emergency jury instruction, the jury could have excused Mr. Mathis's climbing on top of the tanker because he was doing so in the context of a sudden emergency. They could have perceived that. But didn't you argue in response to the defendant's argument that he climbed on top of the tanker because he thought that there was an emergency involved? No, we were not permitted to argue the sudden emergency issue to the jury in closing arguments because we were not granted that jury instruction. That was the prejudice that occurred. The jury did not have the benefit of knowing that they could be critical of Anthony's actions but still feel that he or conclude that he acted reasonably under the circumstances of an emergency. They were not informed that that was an option for them. On the gross negligence issue, the court again drew inferences against the plaintiff in considering the 50A motion. It discounted Reggie Porter's prior specific particular complaint that that specific tanker was dangerous, was holding pressure, and would hurt someone. The court drew inferences that since Reggie Porter was not wearing a jacket, his incident must have happened in a warmer month. That's an inference the court drew in favor of the defense. But you had to discuss why he did or didn't climb on top of the tanker. You had to say why. In defense to the contributory negligence, he could say I climbed on there because I thought there was an emergency. I thought the thing would have exploded. That was why he climbed up there. What other reason would he have climbed up there? He said he testified, Anthony Mathis, that he climbed up there to make sure nothing bad happened. He didn't speak so eloquently in his testimony considering his brain injury, but he did indicate that he was trying to avoid something bad. Overpressurization of a tanker is a known hazard in the industry that was undisputed. Every single witness testified to that. After the incident, it was determined that the pressure relief valve was not functioning at all. The defendant knew the tanker was holding pressure, was dangerous. The defendant's fleet manager, James Powell, agreed to take a look at it, and he did not. He sent it in for just the standard preventative maintenance that the defendant created the program for, which did not What you've just told me came before the jury, didn't it? No, because the court removed gross negligence as a cause of action the jury could decide and consider by drawing inferences in favor of the defense and discounting Reggie Porter's prior particular specific complaint that that tanker was holding pressure, dangerous, and would hurt someone. The defendant's manager agreed to take a look at it. He did not because the defendant's preventative maintenance program did not include inspection and servicing of the pressure relief valve. As a consequence, that pressure relief valve, which is a critical piece of safety equipment that relieves pressure on the tanker, was not serviced, not inspected, even though it was capable of inspection and servicing, and the judge in ruling on the 50A discounted that prior complaint by Reggie Porter by drawing inferences and weight. I understand, thank you, and we've thank you given you some extra time, and if my co-panelists have further questions of you, I'm willing to let that. I'm fine, thanks. All right, well we appreciate all of the lawyer's contributions here, and what we'll do is we'll adjourn court until this afternoon, and we will conference as soon as the courtroom deputy is kind enough to clear the courtroom. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. you
judges: J. Harvie Wilkinson III, Pamela A. Harris, Julius N. Richardson